IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES OF AMERICA,**

v.                                                                    Criminal Action No. 2:18cr56

**JEREMY MILES,**

**Defendant.**

## OPINION & ORDER

These matters come before the Court on Defendant's Motion to Suppress, Doc. 24, and Defendant's Motion to Disclose Confidential Witness, Doc. 25. The Court addressed these matters at a hearing held on April 11, 2019. The Court ruled from the bench and **DENIED** all the motions. The Court hereby issues this Opinion and Order to further explain its rulings.

## I. INTRODUCTION

Defendant moves to suppress:

1. All physical and tangible evidence, and all testimony related thereto, obtained from the March 1, 2017 arrest and search and seizure of evidence from 21422 Stonehouse Road, Onley, Virginia (the "March 2017 Arrest").[1]

2. All physical and tangible evidence, and all testimony related thereto, obtained from the June 28, 2017 warrantless stop of the silver Toyota, arrest and search and seizure of evidence from Jeremy Miles (the "June Traffic Stop").

3. All physical and tangible evidence, and all testimony related thereto, obtained from the July 19, 2017 arrest and search and seizure of evidence from 22453 Bayside Road in Onancock, Virginia (the "July 2017 Arrest").

---

[1] At oral argument, the Government moved to withdraw Count 2 of the Indictment. The Court **GRANTED** that withdrawal. Because Count 2 was the only charge related to the March 2017 arrest, the portion of Defendant's motion which relate to this arrest is **MOOT**.

1

Doc. 24 at 1. Defendant also moves this Court to hold a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) on his motion to suppress the evidence related to the March 2017 arrest. Doc. 24 at 2.

Defendant is charged in an eight-count indictment with: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §846 ("Count One"); 2); Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C § 841 ("Counts Three, Four, and Five"); Possessing a Firearm in Furtherance of a Drug Trafficking Crime pursuant to 18 USC § 924(c)(1)(A) (Count Six"), and Possession of a Firearm by a Convicted Felon pursuant to 21 U.SC. § 922 ("Counts Two,[2] Seven, and Eight"). Doc. 1 ("Indictment"). The evidence that Defendant seeks to suppress supports the factual bases for Counts One through Eight of the Indictment.

On April 11, 2019, this Court held a hearing on the motions. At that hearing, the Court heard arguments of counsel and testimony by Special Agent Wade of the Virginia State Police. Both parties examined Agent Wade on the June traffic stop and the July 2017 arrest.

For reasons described herein and articulated from the bench, the Court:

1. **DENIES** Defendant's Motion to Suppress evidence related to the March 2017 Arrest **AS MOOT**;[3]
2. **DENIES** Defendant's Motion to Suppress evidence related to the June Traffic Stop;
3. **DENIES** Defendant's Motion to Suppress evidence related to the July 2017 Arrest;
4. **DENIES** Defendant's Motion for a Franks hearing; AND

---

[2] See supra, n.1.

[3] Supra n.1

2

5. **DENIES** Defendant's Motion to Compel the Government to Disclose the Identity of its Confidential Witness.

## II. MOTIONS TO SUPPRESS

A. **LEGAL STANDARD**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court of the United States recognizes an exception to this requirement for the search of vehicles. Carroll v. United States, 267 U.S. 132, 153 (1925) (no warrant required "where it is not practicable to secure a warrant because the vehicle can be *quickly moved* out of the locality or jurisdiction in which the warrant must be sought.") (emphasis in original). An automobile stop is thus subject to the constitutional imperative that it not be unreasonable under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810 (1996) (citations omitted). So long as probable cause exists, police may search a car and containers found within it. California v. Acevedo, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.").

Probable cause exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996). Additionally, probable cause "deals with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 241 (1983) (citation omitted). To determine whether a magistrate or an officer performing

3

an automobile search has probable cause courts look to the totality of the circumstances and evaluate "whether, given all the circumstances set forth in the affidavit before [the officer], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. This same standard applies when reviewing whether an officer had probable cause to search a vehicle.

When a warrant for a search has been obtained, courts still review the sufficiency of the warrants "to ensure that such an abdication of the magistrate's duty does not occur." Gates, 462 U.S. at 238.

**B. RELEVANT FACTS**

*i. June 2017 Arrest*

According the Government's response, police had been investigating the drug dealing activities of the Defendant's brother and Defendant himself. Doc. 27 at 2; Doc. 24-1 ("Def.'s Ex. 1 at 1"). Cooperating witnesses previously informed the police that the Defendant and his brother frequently sold drugs on the Eastern Shore and possessed weapons that they used in connection to those selling activities. Id. One unnamed witness informed police that Defendant brandished a firearm, shot at, and missed the witness's head in an argument. Def.'s Ex. 1 at 1.

Defendant's June 2017 arrest is more closely related to a June 2017 traffic stop preceding the instant stop, wherein police stopped a person who later became their confidential information ("CI"). On June 26, 2017, law enforcement conducted a traffic stop of a 2004 Toyota four-door sedan. Doc. 24-4 ("Def. Ex. 4") at 1. The basis for the stop was that the car appeared to have tinted windows darker than the minimum thirty-five percent (35%) tint allowed under Virginia law. Id. The officer tested the rear driver door window, which measured twelve percent (12%) tint. Id. After detecting an odor of marijuana emanating from the vehicle, officers searched the

vehicle and found greenish flakes of plant matter, suspected crack cocaine and small tablets in the vehicle. Id. at 2. The driver was arrested and chose to waive the driver's rights and speak with law enforcement. Id. According to the Government's response, they were familiar with CI, as the CI had a prior history with drug distribution. Doc. 27 at 8.

In the interview, the CI advised law enforcement of the following: (1) that the CI "had just got the five Percocet pills and crack cocaine . . . from a black male that [the CI] only knew as J-Rock;" (2) that "J-Rock was staying at the trailer with Ron-Ron and Keva and that they were selling cocaine and pills from the residence [and] making runs to make drug sales;" (3) that "J-Rock has a black handgun and was looking to buy another one;" (4) and that the CI "cleaned the residence and owed J-Rock $130.00 for the drugs and that he credited to the CI $25.00 for [the CI's] cleaning services." Def. Ex. 4. The CI also stated that "J-Rock had had approximately two ounces of cocaine, a large bag of pills and a black handgun" when the CI left the residence. Id. The CI agreed to cooperate and advised law enforcement that the CI was lending the CI's car to "J-Rock" to make drug runs. Id.

On June 28, 2017, officers prepared to arrest an individual named "Elwood Miles" ("Elwood")[4] for an outstanding felony charge and based on "a probable cause search of a vehicle being operated by [Elwood] and [Defendant] based on reliable information received from a confidential reliable informant that [Defendant] was carrying a large quantity of cocaine and prescription pills in addition to a firearm." 24-5 ("Def. Ex. 5") at 1. The vehicle described was the vehicle driven by the CI. Id.; see Def. Ex. 4. Officers began surveillance at 1830 (6:30 p.m.) hours, and at 2200 hours (10:00 p.m.). Id. Surveillance revealed the vehicle described by CI was

---

[4] Elwood Miles is the Defendant Jeremy Miles's brother. In an effort to minimize confusion, this Opinion and Order refers to Defendant as "Defendant" and his brother as "Elwood."

5

occupied by Defendant and Elwood. Id. Subsequently, officers observed the CI's vehicle and began a non-aggressive roadblock and stopped the vehicle. Id. The driver of the target vehicle attempted to drive around officers after the officer began the roadblock. Id. When the vehicle was stopped, an individual got out of the car, began to run, and fell. Hr'g Tr. 16:19-25. Once that individual was apprehended, a small, brown paper that contained suspected crack cocaine was found where he fell. Id. at 17:2-5. Subsequently, the driver and passengers were ordered out of the car. Id. at 17:6-7.

Elwood was the driver. Id. at 17:9. Defendant was located in the rear driver side passenger seat. Id. at 17:10-11. As Defendant exited the vehicle, Agent Wade observed a "knot" in Defendant's front pant pocket. Id. at 17:13-17. Having been told of Defendant's drug and gun activities, Agent Wade conducted a pat down of Defendant. Id. at 17:21-25. He testified that the knot was consistent in size and shape as described by the CI. Id. He suspected the knot to be contraband and removed it to discover that it was cocaine and pills. See id.; 18:1.

A search of the vehicle led to the discovery of a black handgun under the rear portion of the driver's seat, at Defendant's feet. Id. at 18:17-19. The officers also found a digital scale, packing materials, plastic bags, and multiple cell phones. Id. at 18:19-19:1-4. Defendant was arrested and charged with Possession of a Controlled Substance with Intent to Distribute, Possession of a Firearm by a Convicted Felon, and Possession of a Firearm while Possessing controlled substance for sale. Id. Eventually, Defendant was released on bond.

*ii. July 2017 Arrest*

On July 14, 2017, agents conducted a controlled purchase of crack cocaine from Defendant in the Mappsville area of Accomack County, Virginia using a CW (the CI). Doc. 24-1 ("Def. Ex. 1") at 3. On July 19, 2017, through information from the CI, agents learned that Defendant was

residing at and selling cocaine from 22453 Bayside Road Onancock, Virginia 23416 ("'453 Bayside"). Id. That same day officers attempted a controlled substance purchase of crack cocaine from Defendant at '453 Bayside. Id. at 4. Officers watched the CI arrive at the residence and meet another individual ("Warner" a/k/a "Tony") who advised the CI that he would get crack cocaine from Defendant to sell to the CI.[5] Agents observed Warner enter 22471 Bayside[6] (" '471 Bayside") and "quickly exit" then travel to the CI with crack cocaine. Doc. 24-7 (Def. Ex. 7), Doc. 24-8 (Def. Ex. 8).

Warner then met CI at a substation a "couple" miles away. Hr'g Tr. 52:20-25-53:1-5. The controlled buy took place at the substation, and Warner returned to '473 Bayside. Id.

Officers obtained a search warrant for '453 Bayside and the adjacent residence, '471 Bayside. The warrants were to search for "cocaine, cutting agents, packing materials, scales, US currency, cell phones, owe sheets, ledgers [and] smoking devices." Id. Officers executed the search warrant at '453 Bayside where they found Defendant and the following evidence: a loaded AK-45 assault rifle,[7] a digital scale from the gold pick-up truck in the driveway, and a glass smoking device on the front seat. Def. Ex. 1 at 4. Warner was also at '453 Bayside when officers executed the search. After arrest, he agreed to cooperate with law enforcement and advised that the weapon belonged to Defendant. Id.

---

[5] The CI was equipped with video and audio recording equipment and money to purchase the crack cocaine. Id. That equipment apparently malfunctioned and such records are unavailable. Hr'g Tr. 54:21-23.

[6] The affidavit in support of the search warrant for 22471 Bayside Road indicates that the address of this residence was 22471 Bayside Road. Doc. 24-10 ("Def. Ex. 10"). However, the case summary incorrectly identifies this address as 22453 Bayside. See Def. Ex. 1.

[7] Apparently, the weapon was not in fact an AK-47, but a Yugoslavian Model M-5.

7

## C. ANALYSIS

### i. *June 2017 Arrest*

Defendant argues that officers did not have probable cause to conduct the warrantless search of the vehicle during the June 2017 Arrest. Doc. 24 at 18. Specifically, Defendant challenges the fact that the June 28, 2017 surveillance of the vehicle was allegedly based on "based on reliable information received from a confidential reliable informant" however "[n]o information regarding the reliability of the confidential source was revealed." Id. Based on review of the above referenced evidence, Defendant believes that this individual was the same individual involved in the initial June 26, 2017 traffic stop for dark tint. Id. at 19. While Defendant concedes that the CI likely provided information to law enforcement that Defendant was in the vehicle, Defendant contends that prior to surveillance the location of the vehicle was "most likely acquired by virtue of the fact that on June 26, 2017, a tracking device had been placed on the vehicle." Id. at 20. Defendant argues that the legitimacy of the surveillance and identity of Elwood and Defendant is "highly questionable" because of how dark the tint on the vehicle was combined with the fact that the stop occurred at 10:00 p.m. Id.

Because the traffic stop was not based on reasonable suspicion, but on probable cause by the confidential informant,[8] Defendant argues that this Court should look at the "totality of the circumstances" taking into account the veracity and basis of knowledge of the CI. Id. (citing Gates, 562 U.S. at 213). A CI's veracity may be shown based on information that the CI provided correct information in the past, or that the informant's tip was an admission against his own interest. See McCray v. Illinois, 386 U.S. 300 (1967); United States v. Harris, 403 U.S. 573, 580 (1971) (informant's declaration against interest demonstrated sufficient veracity). Defendant cites four

---

[8] In his papers, Defendant does not explain why the stop "was not based on reasonable suspicion" other than that the police had information from an informant.

8

(4) bases by which the Court can conclude that the informant had a sufficient basis of knowledge: (1) the Government may show that the informant directly observed the criminal conduct, McCray, 386 U.S. 300; (2) the Government may show that the informant directly observed suspicious conduct (if the precise nature of the conduct is disclosed), United States v. Ventresca, 380 U.S. 102 (1965); (3) the Government can show that the informant was told the criminal conduct occurred (if the ultimate source of information had veracity and basis of knowledge), id.; or (4) that the informant's tip is sufficiently detailed that the tip is "self-verifying," Draper v. United States, 358 U.S. 307 (1959).

In light of the information provided by the CI who solely identified the individual who drove the CI's vehicle as "J-Rock" Defendant argues that the reports "do not suggest that law enforcement suspected, or knew [or confirmed] that J-Rock was an alias for Jeremy Miles." Doc. 24 at 21. Defendant also avers that "the government has provided no information regarding the veracity for truthfulness" of the CI. Id.

The Government responds by providing the following facts regarding the veracity and basis of knowledge of the CI:

1) the informant and had conducted a previous investigation on this informant and even purchased a Fentanyl patch from the informant during an undercover operation.

2) police did not just meet this informant two days earlier when they pulled the CI's car over

3) the informant agreed to cooperate and in a debrief she stated that the drugs in the CI's car were purchased from the defendant and that the CI has been purchasing drugs from the defendant.

4) the CI also admitted that the CI was selling Fentanyl patches on the street against the informant's penal interest.

5) on June 28, 2017 CS1 informed the police that the defendant had borrowed the CI's car and was making a drug run across the CBBT

6) the CI said that the defendant had a package of cocaine on his person and gave the CI a small portion as payment for using the CI's car. The CI said that the defendant had a handgun on his person.

Doc. 27 at 9. Additionally, the Government provides that officers had obtained the following information from an independent investigation of Defendant and his brother:

1) they learned that the defendant and his brother were distributing drugs on the Eastern Shore and possessing firearms while distributing drugs;

2) they also learned that the defendant drives across the CBBT to re-up on drugs from a supplier.

Id. It was after receiving the above referenced information that law enforcement activated the GPS tracking and began surveillance of the vehicle. Id. When law enforcement tracked the vehicle to Chesapeake, they were also advised by local law enforcement that the vehicle was in a high drug trafficking area. Based on all of the facts above the Government argues that there was probable cause to stop the vehicle. Id. Additionally, the Government provides that once the vehicle was stopped, a marijuana cigarette was observed as well as other drug content. Id.

The government further argues that the evidence provided by their surveillance, that Elwood was the driver, coupled with his outstanding warrant provides sufficient probable cause to stop the vehicle. Id. at 10-11.

The Court **FINDS** that there was sufficient probable cause for the officers to stop the vehicle based on the information provided above. The CI appears to have demonstrated both veracity and a sufficient basis of knowledge. This information as corroborated by the officer's independent investigation provides enough of a basis to stop the vehicle. Moreover, the police had sufficient information to stop the vehicle, because there was an outstanding warrant for the driver's arrest. The police obtained verification that Elwood was driving the vehicle at the time. Thus, the

stop was justified on that ground as well. Accordingly, the stop was properly supported and the evidence relating to it need not be suppressed. Thus, that portion of the motion is **DENIED**.

To the extent the Defendant challenges the subsequent search of the vehicle and his person, the Court **FURTHER DENIES** his motion. It is well-settled that an officer may order passengers out of a car pending a stop. Maryland v. Wilson, 519 U.S. 408 (1997). It is likewise accepted that police may conduct a warrantless search of car, if there is probable cause to believe that the car contains evidence of a crime. Acevedo, 500 U.S. at 580. Police may also conduct a pat down when they have reasonable suspicion that a suspect is armed and dangerous. Terry v. Ohio, 392 U.S. 1, 24 (1968).

In this case, the CI told the police that Defendant borrowed the CI's car and was conducting a drug run and that he had a gun on him. Moreover, pursuant to their independent investigation, the police learned that the Defendant makes drug runs to "re-up" his supply and keeps a handgun on his person. The vehicle traveled to the location where the CI indicated it would go – i.e., where Defendant allegedly obtains drugs – and that Defendant was using CI's car, which is his general practice according to the CI. That information, known to the police prior to the stop, helps support the CI's veracity. When the police stopped the vehicle, they noticed a large bulge in Defendant's pocket, and a marijuana cigarette in Elwood's ear. Thus, on the stop a person of reasonable prudence viewing the matter under the totality of the circumstances would conclude that drugs, other drug-related contraband, and/or weapons used for drug transactions could be found in the vehicle. Accordingly, the search of the vehicle was properly supported by probable cause.

Further, the police had been told by several witnesses that the Defendant often has weapons that he uses in connection with his drug activity. The CI told police that Defendant had a gun on his person on the relevant night. Moreover, a witness in the police's February/March investigation

told the police that Defendant had shot at his head before. Accordingly, the search of Defendant's person is at least justified by a Terry frisk. Therefore, to the extent Defendant seeks to exclude evidence obtained from the traffic stop, that request is **DENIED**.

*ii.  July 2017 Arrest*

Probable cause is established only when a magistrate determines that "given all the circumstances set forth in the affidavit[,] . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. Defendant points to the language provided in the affidavit and argues that "it is impossible to conclude, that the magistrate made a practical, common-sense decision that there was a fair probability that contraband or evidence of a crime would be found in 22453 Bayside Road." Doc. 24 at 23. The language provided in the affidavit was:

> Within the last seventy-two hours your affiant and members of the Eastern Shore Drug Task Force conducted a controlled drug purchase from Antonio Warner at 22453 Bayside Road utilizing CSI#1. Surveillance units were utilized and observed Warner come from 22453 Bayside Road and meet CSI#1. Warner then proceeded into a second residence located at 22471 Bayside Road which is directly adjacent to 22453 Bayside Road. Warner left 22471 Bayside Road and provided CSI#1 with a quantity of suspected cocaine which was field tested and tested positive for cocaine. Warner was then observed returning to 22453 Bayside Road after completing the drug transaction.

Def. Ex. 10. Defendant points to the fact that "Warner left 22453 Bayside Road and went into the residence located at 22471 Bayside Road, after which time, he came out and provided the CSI with the cocaine." Doc. 24 at 24. Based on this fact, Defendant argues that "there are simply no facts set forth in the Affidavit that suggest that contraband would be located at 22453 Bayside Road" as opposed to the 22471 locations except that they are adjacent to each other. Id. Because no further information was provided to the magistrate linking the two buildings, Defendant argues that the affidavit was insufficient to support the magistrate's issuance of the warrant. Id. While the case

12

summary suggests that the CI knew defendant to distribute drugs from that address, it was not provided in the Affidavit. Id. Defendant argues that the Sixth Circuit's case in United States v. Brown, 828 F. 3d 375, 384 (6th Cir. 2016) is instructive. In Brown, the Sixth Circuit noted that "[t]he job of the magistrate judge presented with a search warrant application is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." Brown, 828 F.3d at 834. "There must, in other words, be a nexus between the place to be searched and the evidence sought." Id. (emphasis in original). Defendant contends that there is no such nexus providing information that drugs were found in '453 Bayside in this case.

The Court **FINDS** that the language provided in the affidavit is sufficient to establish probable cause. The affiant attested that due to his training and experience, drug traffickers frequently keep drugs and money in separate locations, explaining Warner's strange behavior in going in and out of two (2) houses. While Defendant argued that no one saw where the drugs came from, it is a legitimate inference that the drugs came from the home. It is likewise a legitimate inference that the money from the buy would be found in the '453 residence after the sale. Thus, there is probable cause to believe that evidence of a crime (drug proceeds) would be found there. These facts coupled with the information learned from the CI shows probable cause. Additionally, the Government points to attachment 6 of the affidavit supporting the search warrant in which supports additional bases for the officer's knowledge. Accordingly, there was sufficient probable cause to support a search warrant for the '453 house. Therefore, Defendant's motion is **DENIED** in that respect as well.

### iii. *Franks* Challenges

In Defendant's motion, he asserted that the information in the March 1, 2017, warrant application was at least recklessly dishonest. Doc. 24 at 2. He goes on to make a detailed argument as to why that warrant should be voided for Franks misrepresentation. Id. at 13-18. As the Government withdrew the only relevant count to that warrant, that motion is **DENIED as MOOT**. His motion does not mention a Franks challenge in regards to the July 2017 warrant. However, at the hearing, Defendant briefly asserted that the July 2017 warrant application contained material omissions, i.e., the fact that Warner gave the CI drugs at the substation. Hr'g Tr. 68:12-15. The Court will briefly address that point.

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause" the court should hold a hearing as to the veracity of the affidavit. 438 U.S. 154, 155-56. This "substantial preliminary showing," should not be conclusory, and should be accompanied by a detailed offer of proof. United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). "The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit . . . Franks protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate . . . Mere negligence in . . . recording the facts relevant to a probable cause determination is not enough." Id. at 301. (internal citations and alterations omitted, emphasis in original).

To begin, Defendant has not made a "substantial" showing that Agent Wade acted with purpose to mislead or that he acted recklessly as to any misleading character of his affidavit.

14

Indeed, Defendant's papers do not suggest any misleading nature as to the July 2017 application. At the hearing, Defendant asserted that the application contained "material omissions" and "affirmative misrepresentations." However, as the Court stated at the hearing, there were two (2) transactions: one (1) occurred at the home, where Warner got his drugs, and one (1) at the substation, where Warner gave the drugs to the informant. Just because Agent Wade discussed the first transaction does not mean he lied about the second. Moreover, there was probable cause to believe that evidence of a crime – at least U.S. currency stemming from the buy – would be found at the home, and the substation transaction is not necessary to find probable cause on that fact. Thus, the Court is not satisfied that Defendant has produced enough proof to void the warrant for Franks misrepresentation. Accordingly, the Court **DENIES** the motion to the extent it can be understood to make a Franks challenge to the July 2017 warrant.

### III. MOTION TO PRODUCE CONFIDENTIAL INFORMANT

A. **LEGAL STANDARD**

Defendant bears the burden of proof to show that disclosing the confidential informant is necessary. Rugendorf v. United States, 376 U.S. 528, 534-35; United States v. D'Anjou, 16 F.3d 604, 609-10 (4th Cir. 1994). "[T]he privilege of nondisclosure ordinarily applies where the informant is neither a participant in the offenses, nor helps set up its commission, but is a mere tipster who only supplies a lead to law investigating and enforcement officers." United States v. Price, 783 F.2d 1132, 1138 (4th Cir. 1986).

B. **ANALYSIS**

Defendant argues that disclosure of the confidential informant in this case is warranted because "[t]he discovery produced by the United States does not provide any indication or

information that the confidential source was reliable" or that the informant had a "basis of knowledge" and the Defendant should be permitted to cross-examine the witness.

The Government replies by noting that the Defendant must provide "concrete reasons for disclosure and not just mere conjecture or speculation." Doc. 27 at 16. The Government argues that the CI was a mere "tipster" with regard to the June 2017 Arrest and therefore the law protects the CI's identity. Id. (citing Price, 783 F.2d at 1138).

Based on the evidence above regarding the CI's veracity and basis of knowledge, that the Defendant has failed to provide a concrete basis to disclose the CI's identity. Moreover, the CI seems to be a "mere tipster" as the extent of the CI's involvement in the case is telling the police that Defendant had borrowed the CI's car. The police then activated a GPS device that the CI allowed to be put on the CI's car and investigated the matter on their own. Therefore, the Court **DENIES** this motion as well.

## CONCLUSION

Of course, at this stage of the proceedings, the Court is merely adjudicating whether the traffic stop and the search warrant were properly supported by information known to the officers at the time and legitimate inferences therefrom, and whether the Constitution requires that the evidence be suppressed. The Court is not evaluating the persuasiveness of the evidence in terms of the merits of this case, but rather whether the evidence was legitimately obtained. The Court believes that it was.

Accordingly, for the reasons stated above and from the bench, the Court:

(1) **DENIES** Defendant's Motion to Suppress as it pertains to the March 1, 2017, search warrant as **MOOT**;

(2) **DENIES** Defendant's request for a Franks hearing relating to the March 1, 2017, warrant as **MOOT**. To the extent that Defendant made a Franks challenge relating to the July 2017 warrant, that challenge is also **DENIED**;

(3) **DENIES** Defendant's motion to suppress evidence found as a result of the June 28, 2017, warrantless traffic stop, because the stop and search of the car and Defendant's person were supported by probable cause;

(4) **DENIES** Defendant's motion to suppress evidence found as a result of the search of the '453 Bayside house, because that warrant was properly supported by probable cause; AND

(5) **DENIES** Defendant's Motion to Identify the Confidential Informant.

The Clerk is **REQUESTED** to distribute a copy of this Order to counsel of record.

It is **SO ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

Norfolk, Virginia
April 30, 2019

HENRY COKE MORGAN, JR.
SENIOR UNTIED STATES DISTRICT JUDGE